**IJH LAW**
Ignacio J. Hiraldo
(*pro hac vice*)
1200 Brickell Ave
Suite 1950
Miami, FL 33131
Email: ijhiraldo@ijhlaw.com
Telephone: 786.469.4496

**EISENBAND LAW, P.A.**
Michael Eisenband, Esq.
(*pro hac vice* to be filed)
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Telephone: (954) 533-4092
Email: meisenband@Eisenbandlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| **Ricci Saliba,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**KS Statebank Corporation,**<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

Plaintiff Ricci Saliba brings this class action against Defendant KS Statebank Corporation ("Defendant"), and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), arising from Defendant's knowing and willful violations

CLASS ACTION COMPLAINT

of the TCPA.

2. Defendant is a bank with six branches throughout Kansas and one in Phoenix, Arizona.[1] Defendant also has Mortgage Origination Offices throughout the country including Kansas, Minnesota, Arizona and Missouri.[2]

3. As part of its business, Defendant engages in unsolicited telemarketing directed towards prospective customers with no regard for consumers' privacy rights.

4. Defendant's telemarketing consists of automated text messages to consumers soliciting them to purchase its goods and/or services.

5. Upon information and belief, Defendant caused thousands of text messages to be sent to the cellular telephones of Plaintiff and Class Members, causing them injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

6. Through this action, Plaintiffs seek injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of herself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

**JURISDICTION AND VENUE**

7. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs allege a national class, which will result in at least one Class member belonging to a

---

[1] *See* https://www.ksstate.bank/about-us/ (last accessed 2/28/2020)

[2] *Id.*

different state than Defendant. Plaintiffs seek up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

8. Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction.

## PARTIES

9. Plaintiff is a natural person who, at all times relevant to this action, was a citizen of the state of Arizona.

10. Defendant is a Kansas corporation with its principal address at 1010 Westloop PL. Manhattan, Kansas 66502-2836. Defendant directs, markets, and provides business activities throughout the State of Arizona. Defendant maintains a Phoenix Branch location at 5110 North Central Avenue, AZ 85012 and Loan Production Offices at 9237 East Via de Ventura, Suite 210, Scottsdale, AZ 85258 and 16430 North Scottsdale Road, Suite 117, Scottsdale, AZ 85254.

## THE TCPA

11. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

12. The TCPA further prohibits: (1) any person from initiating a call to any

residential telephone line; (2) using an artificial or prerecorded voice; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(B).

13. The TCPA exists to prevent communications like the ones described within this Complaint.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

14. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice."  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

15. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

16. In 2012, the FCC issued an order further restricting automated <u>telemarketing</u> calls, requiring "prior express <u>written</u> consent" for such calls.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

17. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls

at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

18.  The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

19.  "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

20.  "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

21.  The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

22.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

23.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

# FACTS

24.     On or about October 18, 2019, October 25, 2019, November 2, 2019 November 8, 2019, November 9, 2019, November 14, 2019, November 23, 2019, November 30, 2019, December 5, 2019, December 13, 2019, December 23, 2019, January 1, 2020, January 8, 2020, January 15, 2020 and January 16, 2020, Defendant caused the following automated text messages to be transmitted to Plaintiff's cellular telephone number ending in 8025 ("8025 Number"):





> **(623) 526-8414** Mobile
>
> 1/8/20 12:34 PM
>
> As a New Yorker, I'm a straight shooter and believe knowledge is power. You have a lot riding
> on each contract and choosing an LO you can trust is top priority. With 25 years experience, I
> pride myself making your customers feel valued, informed and at ease. Call or email
> ███████ksstate.bank. Roy Meshel, NMLS█████
>
> 1/15/20 10:41 AM
>
> Who's this guy that keeps texting me? I grew up in NY, attended ASU, earning my finance
> degree, then headed back to NY. But I missed the southwest, so I came back to AZ and, by
> accident, fell into mortgages. I love the pace and excitement and wouldn't change a thing. Let's
> talk! Roy, NMLS█████
>
> 1/16/20 10:06 AM
>
> My wife and I have been married 17 years and have three children. I'm known as the grill
> master, but my hobby goes beyond flipping burgers and hot dogs. My outdoor kitchen includes
> not only a state-of-the-art grill, but also a smoker, wok and pizza oven, which is where you will
> find me most weekends. Roy, NMLS█████ [3]

25. Plaintiff is the subscriber and/or sole user of the 8025 number.

26. Defendant's text messages constitute telemarketing/advertising because they promote Defendants business, goods and services.

27. Specifically, the text messages promote Defendant's mortgage origination and mortgage financing business.

28. Upon information and belief, Defendant obtains a financial benefit from selling its goods and services including mortgage loans.

29. Plaintiff received the subject text messages within this judicial district and, therefore, Defendants violation of the TCPA occurred within this district.

---

[3] Plaintiff has redacted the personal email address, direct phone number and license information of Defendant's employee.

30. Upon information and belief, Defendant caused similar text messages to be sent to individuals residing within this judicial district.

31. At no point in time did Plaintiff provide Defendant with her express consent to be contacted by text messages using an ATDS.

32. The number used by Defendant (623-526-8414) is known as a "long code," a standard 10-digit phone number that enabled Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

33. Long codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

34. The impersonal and generic nature of Defendant's text messages, demonstrates that Defendant utilized an ATDS in transmitting the messages.

35. To send the text messages, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

36. The Platform has the capacity to store telephone numbers.

37. The Platform has the capacity to generate sequential numbers.

38. The Platform has the capacity to dial numbers in sequential order.

39. The Platform has the capacity to dial numbers from a list of numbers.

40. The Platform has the capacity to dial numbers without human intervention.

41. The Platform has the capacity to schedule the time and date for future transmission of text messages.

42. To transmit the messages at issue, the Platform automatically executed the following steps:

> (1) The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;
>
> (2) The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's messages to create "packets" consisting of one telephone number and the message content;
>
> (3) Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.
>
> (4) Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant. Each mobile carrier then sent the message to its customer's mobile telephone.

43. The above execution of Defendants' instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

44. The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



45. Defendant's unsolicited text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that she wasted at least ten seconds reviewing each of Defendant's unwanted messages.

46. Plaintiff was at home when she received many of these messages, which resulted in her phone vibrating and a disturbance of the domestic peace of Plaintiff's home.

47. Furthermore, Defendant's text messages took up memory space on Plaintiff's cellular telephone, with each message taking up approximately 190 bytes. The cumulative effect of unsolicited text messages like Defendants' poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up.

48. Defendant's text messages also caused the depletion of Plaintiff's cellular telephone battery. The battery used to power Plaintiff's cellular telephone can only be recharged a limited number of times before the battery's voltage begins to decrease, causing the cellular phone to turn off completely, without warning, if the battery drops below the minimum voltage needed to safely power Plaintiff's cellular telephone.

49.     Defendant's unsolicited text messages caused Plaintiff additional harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's calls also inconvenienced Plaintiff and caused disruption to her daily life.

## CLASS ALLEGATIONS

### PROPOSED CLASS

50.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

51.     Plaintiff brings this case on behalf of the below defined Class:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number.**

52.     Plaintiffs reserve the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

53.     Defendant and its employees or agents are excluded from the Class. Plaintiffs do not know the number of members in the Class but believes the members of the Class number in the several thousands, if not more.

### NUMEROSITY

54.     Upon information and belief, Defendant has placed calls to telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Classes, therefore, are believed to be so

numerous that joinder of all members is impracticable.

55. The exact number and identities of the members of the Classes are unknown at this time and can be ascertained only through discovery. Identification of the members of the Classes is a matter capable of ministerial determination from Defendants' call records.

**COMMON QUESTIONS OF LAW AND FACT**

56. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

(1) Whether Defendant made non-emergency calls to Plaintiffs and the Class members' cellular or residential telephones using an ATDS;

(2) Whether Defendant can meet their burden of showing that they obtained prior express written consent to make such calls;

(3) Whether Defendant's conduct was knowing and willful;

(4) Whether Defendant is liable for damages, and the amount of such damages; and

(5) Whether Defendant should be enjoined from such conduct in the future.

57. The common questions in this case are capable of having common answers. If Plaintiff's claims that Defendant routinely transmits text messages to cellular telephone numbers is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

58. Plaintiffs' claims are typical of the claims of the members of the Classes, as

they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

59.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff are adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

60.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

61.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Class)**

62.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set

forth herein.

63. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

64. The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. at §227(a)(1).

65. Defendant – or third parties directed by Defendant – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such

numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

66. These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

67. Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

68. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ricci Saliba, individually and on behalf of the other members of the Class, pray for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. A declaration that Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c. An injunction prohibiting Defendant from calling telephone numbers assigned to cellular or residential telephones using an ATDS without the prior express consent of the called party;

d. An award of actual, statutory damages, and/or trebled statutory damages; and

e. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiffs demand that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the communication or transmittal of the prerecorded messages as alleged herein.

Date: March 10, 2020

Respectfully submitted,

**IJH LAW**

*/s/ Ignacio J. Hiraldo*
Ignacio Hiraldo
*(Pro Hac Vice*)
Florida Bar No. 56031
1200 Brickell Ave. Suite 1950
Miami, FL 33131
Email: IJHiraldo@IJHLaw.com
Telephone: 786-496-4469

*Counsel for Plaintiff and the Class*