**IJH LAW**
Ignacio J. Hiraldo, Esq. (*pro hac vice*)
Florida Bar No. 0056031
Washington, DC Bar No. 485610
1200 Brickell Ave Suite 1950
Miami, FL 33131
Email: ijhiraldo@ijhlaw.com
Telephone: 786.496.4469

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| **Ricci Saliba,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**KS StateBank Corporation,**<br><br>Defendant. | Case No. 2:20-cv-00503-JAT<br><br>**Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement** |

Plaintiff, Ricci Saliba ("Plaintiff") on behalf of herself and a class of similarly situated persons hereby respectfully requests that the Court grant Final Approval of the Settlement in this matter. Defendant KS StateBank Corporation ("Defendant") does not oppose Plaintiff's motion.

**I.    BACKGROUND**

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing

1

calls…."[1] Defendant's former employee, Roy Meshel, caused approximately 3,900 text messages to be sent to Plaintiff and approximately 360 other individuals. Plaintiff alleged that Mr. Meshel's text message campaigns violated the TCPA because the text messages were sent without his first obtaining recipients' express written consent. Plaintiff also alleged that Defendant was vicariously liable for Mr. Meshel's alleged violations of the TCPA because he was Defendant's employee at the time he sent the text messages.

Defendant denies all claims, liability, damages, losses, penalties, interest, fees, restitution and all other forms of relief that were or could have been sought in this lawsuit, as well as all class allegations asserted in this Lawsuit. Defendant continues to dispute their liability for the claims alleged in the lawsuit, and maintains that it complied, at all times, with the TCPA and all other applicable laws and regulations.After vigorously contested litigation and as the result of extensive arm's length negotiations following mediation before Jill Sperber of Sperber Dispute Resolution, the Parties reached an agreement to resolve this class action. In short, the Settlement Agreement ("Settlement Agreement," "Agreement," or Agr.") includes the establishment of a **$775,000** Settlement Fund to be distributed on a pro rata basis to Settlement Class Members after payment of notice and administrative costs, Class Counsel fees, and a Service Payment to the Plaintiff/Class Representative.[2] There is **no reverter** to the Defendant of any portion of the Settlement Fund. Class Members stand to receive meaningful cash payments (of approximately $198 per text message received by the Settlement Class Member) with no requirement that they file a claim.

On May 25, 2021, this Court preliminarily approved the settlement and authorized the distribution of notice to potential Settlement Class Members. [ECF No. 54].

As of the date of this filing, not a single Settlement Class Member has either

---

[1] Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.
[2] The Agreement is attached as **Exhibit A**. All capitalized terms used herein have the same definitions as those defined in the Agreement.

objected to the terms of the Settlement Agreement or opted-out of the Settlement Agreement.

Plaintiff now requests request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel Manuel S. Hiraldo, Ignacio J. Hiraldo, and Michael Eisenband; and (5) enter Final Judgment dismissing the Action with prejudice.[3]

## II.   SUMMARY OF THE SETTLEMENT TERMS

The Settlement terms are detailed in the Agreement filed on April 13, 2021, [DE #38-1], and attached hereto as **Exhibit A**.  The following is a summary of its material terms.

### a.  The Settlement Class

The proposed Settlement establishes a Settlement Class as follows:

> **All persons, and their respective marital communities, within the United States who, (1) within the four years prior to the filing of Plaintiff's Complaint in the Lawsuit, (2) received a text message from Roy Meshel while he was employed by Defendant, (3) advertising and/or promoting one or more of Defendant's mortgage loan products and/or mortgage loan rates, (4) using the texting software provided by Skipio LLC, (5) to said person's cellular telephone number, (6) where the person's telephone number was not obtained by Defendant from a non-party lead generator, and was instead obtained by Mr. Meshel.**

Agr. ¶ 34.

The following are excluded from the Settlement Class:  (a) any trial or magistrate judge presiding over the Action; (b) Defendant, as well as any parent, subsidiary, affiliate or control person of Defendant, and the officers, directors, agents, servants or employees of Defendant; (c) any of the Released Parties; (d) the immediate family of any such Released Parties; (e) any Settlement Class Member who has timely and properly opted out

---

[3] Concurrently with this Motion, Plaintiff has filed a Motion for Attorneys' Fees, Costs, Expenses, and an Incentive Award.

of this Settlement; and (f) Plaintiff's Counsel and their employees. Defendant conditionally agrees and consents to certification of the Settlement Class for purposes of this Settlement only. Agr. ¶ 35.

### b. Settlement Consideration

Pursuant to the Settlement, Defendant has agreed to create a cash common fund of $775,000.00, available for the benefit of Settlement Class Members ("Settlement Fund"). Agr. ¶ 37.

### c. The Notice Program

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Defendant had available about Settlement Class members including their mailing address. The Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq") delivered notice to the Settlement Class Members in accordance with the Settlement Agreement and this Court's preliminary approval order. *See* Decl. of Peter Sperry attached as **Exhibit B** at ¶4. *See, e.g., id.* at ¶¶8-13. Among other actions, Epiq (1) established and maintained an official Settlement Website containing information about the Settlement, Long-Form Notice, and related Court documents, (2) established and maintained an official Toll-Free Telephone Number that Settlement Class Members may contact for additional information about the Settlement; (3) sent CAFA Notice to the appropriate Federal and State government officials; and (4) on July 8, 2021, sent the Mailed Notice to all identified Class Members via U.S. First Class Mail. *Id.* at ¶¶4; 8; 11.

The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fee application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. The Notices and Notice Program constituted sufficient notice to all persons entitled to notice, and satisfied all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

### d. No Claims Process

Any Settlement Class member who does not timely and validly request to opt-out shall remain in the Settlement Class, be bound by the terms of the Settlement Agreement, automatically be mailed a Settlement Fund Payment, and release their claims against Defendant.

### e. Allocation of the Settlement Fund Payments

Each Settlement Class member who does not opt out of the Settlement shall automatically be mailed a Settlement Fund Payment payable by check. Agr. ¶ 61. The amount of each Settlement Fund Payment shall be determined by the following formula: (1) Net Settlement Fund divided by total number of Messages = Settlement Fund Payment Per Message; and, (2) Settlement Fund Payment Per Message multiplied by the number of Messages each Settlement Class Member received = Settlement Fund Payment to Class Member. *Id.* To prevent theft and fraud by third parties, the outside of the envelope or package containing the Settlement Fund Payment checks shall not contain any language describing its purpose, mentioning the class action settlement, or encouraging it to be opened. *Id.*

### f. Class Counsel Fees and Expenses and Plaintiff's Service Award

Class Counsel shall request from the Court a reasonable amount for attorneys' fees and shall request from the Court a reimbursement of Class Counsel's costs and expenses. Agr. ¶ 69. Any award of attorneys' fees, costs, and expenses to Class Counsel shall be payable solely out of the Settlement Fund. *Id.* at ¶ 71. The Parties agree that the Court's failure to approve, in whole or in part, any award for attorneys' fees shall not prevent the Settlement from becoming effective, nor shall it be grounds for termination. *Id.*

Class Counsel shall also request that the Court to approve a reasonable Incentive Award/Service Award to Plaintiff. Agr. ¶ 71. The Service Award is to be paid from the Settlement Fund. *Id.* The Service Award shall be paid to the Settlement Class Representative in addition to the Class Representative's Settlement Fund Payment. *Id.*

The Court should consider whether to grant or deny these awards separate and apart

from its consideration of the fairness and reasonableness of the Settlement.

### III. THE SETTLEMENT SATISFIES ALL REQUIREMENTS AND MERITS APPROVAL

A class action may not be dismissed, compromised, or settled without the approval of the Court. Fed. R. Civ. Proc. 23(e). The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted).

The Ninth Circuit Court of Appeals has articulated several factors relevant to the evaluation of the fairness of a class action settlement: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the consideration offered in settlement; (5) the extent of discovery completed, the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 2011).

In addition, Rule 23(e)(2) requires parties to provide courts with sufficient information to determine that it will likely be able to approve the settlement as fair, reasonable, and adequate. The considerations are whether (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided by the settlement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3) made in

connection with the proposed settlement; and (d) the proposal treats class members equitably relative to each other.

Under both standards, which include overlapping factors, the proposed Settlement is fair, reasonable, and adequate, and should be preliminarily approved.

### a. **The Strengths of Plaintiff's Case and the Risks Inherent in Continued Litigation against Defendant and maintaining Class Certification Favor Final Approval**

The first, second, and third *Hanlon* factors support final approval. Every class action involves uncertainty, both on the merits and on the appropriateness of class certification and this case was no different. There was no guarantee that Plaintiff would be able to verify a class and maintain certification through trial or that this Court would find in Plaintiff's favor as to liability. Prior to Settlement, the Parties actively litigated the action. Indeed, Plaintiff's Motion for Class Certification, [DE 36], was fully briefed and pending at the time the Settlement was reached. As demonstrated by the exhibits attached to Plaintiff's Motion for Class Certification, the litigation involved a large amount of discovery, including multiple depositions.

While Plaintiff strongly believes in the merits of her case, there was substantial risk to continuing to litigate her position. For example, whether Plaintiff would have prevailed on her motion for class certification is uncertain given Defendant's opposition. Further, at the time of Settlement, Defendant still had valid defenses. For example, in opposing Plaintiff's class certification motion, and generally, Defendant argued that its former employee, Mr. Meshel, was acting outside the scope of his employment in sending the text messages at issue. See Defendant's Response in Opposition to Plaintiff's Motion for Class Certification ("Opposition to Class Certification"), [DE 45], at pgs. 5-7. Defendant also argued that the text messages were not marketing on behalf of Defendant because the messages were only sent to benefit Mr. Meshel. *Id*. at pgs. 15-17. Plaintiff replied to Defendant's Opposition, *see* [DE 47], and continues to believe that her Motion for Class Certification would have been granted. However, Class Counsel acknowledge that the

risks posed by Defendant's arguments justify the settlement.

Moreover, even if Plaintiff were to prevail at class certification, risks to the class remain regarding the merits of the Class's TCPA claim. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"), aff'd, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

Securing a $775,000.00 (which equals payments of approximately $198 per text message before subtraction of costs, fees, and any Service Award) settlement now with certainty of payment will provide meaningful relief to Settlement Class Members. Plaintiff and her counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Settlement Class, including the amount of the Settlement Fund. Thus, the Settlement presents a fair and reasonable alternative to continued litigation.

### b. The $775,000.00 Fund Provides a Fair and Substantial Class Benefit

The fourth *Hanlon* factor – the amount offered in the settlement – also favors approval. Defendant has agreed to provide a $775,000.00 non-reversionary Settlement Fund, which will be used to pay all claiming Settlement Class Members and all settlement costs. Class Counsel estimate that the individual Settlement Class Members award will be approximately $198 per text message received by each Settlement Class Member, before reduction of attorneys' fees and costs, Service Award, and notice and administration costs. Although this amount is less than the TCPA's statutory damages of $500, it is well-settled that a proposed settlement need not provide class members with the type of recovery they could obtain following a total win at trial. *See National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery).

Here, the settlement award that each Settlement Class Member will likely receive is fair, appropriate, and reasonable in light of the risk, expense, and uncertainty of continued litigation within the TCPA's changing landscape. This is clearly explained to Settlement Class Members in the Notice so they understand what they are giving up by participating in the settlement. Indeed, the estimated award of $198 per text message received—with most individuals receiving payments for multiple text messages—generally exceeds payments in other TCPA settlements approved across the country. *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, [DE 96] at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40); *Kramer v. Autobytel, Inc., et al.*, No. 10-cv-2722, Dkt. 148 (N.D. Cal. 2012) (cash payment of $100 to each class member); *Estrada v. Yogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal., 2014) (claimants estimated to receive $20 to $40); *In re Capital One Tel. Consumer Prot. Act Litig. (In re Capital One)*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (each claimant received $34.60); *Arthur v. Sallie Mae, Inc.*, 10-cv-0198-JLR (W.D. Wash.) (Class members were to receive between $20 and $40 dollars per claim); *Fox v. Asset Acceptance, LLC*, No. 2:14-cv-00734-GW-FFM (C.D. Cal. June 20, 2016) (estimating recovery between $11.79 and $28.22 per person at time of fairness hearing, from the cash component of the settlement); *Sherman v. Kaiser Foundation Health Plan, Inc.*, 13-cv-00981-JAH-JMS (S.D. Cal.) (individual recovery of $39.68 per claimant). As the current settlement provides superior results to many other approved TCPA settlement, the fourth *Hanlon* factor strongly favors final approval.

### c. **The lack of a Government Participant Supports Final Approval of the Settlement**

While no governmental agency is a party to this lawsuit, Epiq notified all pertinent

government officials of the settlement as required by CAFA. *See* Exhibit B at ¶5. No governmental agency raised objections or concerns about the settlement and this factor therefore supports final approval.

   **d. The Posture of The Case and Experience and View Of Counsel and well as the Reaction of Settlement Class Members Favor Final Approval**

The fifth, sixth and seventh *Hanlon* factors also support final approval of settlement. The Parties actively litigated the action and Plaintiff's Motion for Class Certification, [DE 36], was fully briefed and pending at the time the Settlement was reached. Furthermore, at the time the parties reached their settlement, they had completed discovery – including substantial written discovery took place and the depositions of Plaintiff, non-party Roy Meshel, Defendant's corporate representative, and the corporate representative of non-party Skipio LLC. As a result, the Parties were thoroughly informed of the claims – and the risks associated with them – before they reached a settlement.

Class Counsel – who have substantial experience litigating TCPA class actions – strongly believe that the Settlement is fair, reasonable, adequate, and in the best interests of the Class Members. The opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See e.g.*, *Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal.1988) (opinion of experienced counsel carries significant weight in terms of the reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

Class Member Reaction to the Settlement has been very well received. As of the date of this filing, **not a single Class Member has objected and not a single Class Member has opted-out of the Settlement which was reached**. The lack of objections and exclusions strongly support approval. *See Arnold v. Ariz. Depot. Of Pub Safety*, No. CV-01-1463-PHX-LOA, 2006 WL 2168637, at *10 (D. Ariz. July 31, 2006) (Anderson, M.J.) ("The absence of any objections suggests that the class members are unopposed to terms of the Settlement Agreement. The absence of objections weighs in favor of

approving the Settlement Agreement.; *Wood v. Ionatron, Inc.*, No. CV-06-354-TUC-CKJ, 2009 WL 10673479, at *5 (D. Ariz. Sept. 28, 2009(Jorgenson, J.) (same).

### e. The Settlement Also Meets the Requirements of Rule 23(e)(2) Which Also Favors Final Approval

As stated above, the Settlement reached is a fair and reasonable alternative to continued litigation and as such it meets the requirements of Rule 23(e)(2).

Class Members will receive a substantial monetary award of approximately $198 per text message without having to file a claim. The Ninth Circuit has identified "red flags" that may suggest that plaintiffs' counsel allowed pursuit of their own self-interest to infect settlement negotiations, including when counsel receive a disproportionate portion of the settlement, the parties agree to a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, or the parties agree that any fees not awarded will revert to a defendant rather than be added to the class fund. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). None of these "reg flags" are present in this settlement. Since Class Counsel will be paid from the same Settlement Fund as Settlement Class Members, they were incentivized to negotiate the largest fund possible. There is no clear sailing provision, and the Settlement is not contingent on any amount of attorneys' fees. Further, the Settlement was also not conditioned on any specific amount of a Service Award for Plaintiff. Based on the favorable terms of the Settlement Agreement obtained for the Class, both Plaintiff and Class Counsel have adequately represented the Class's interests as required by Rule 23(e)(2)(A).

As required by Rule 23(e)(2)(B), the Settlement reached was the result of arms-length negotiations with the aid of an experienced mediator. The time and effort spent on settlement negotiations, as well as the time spent in mediation with Jill Sperber, Esq., support approval of the proposed Settlement and strongly indicate there was no collusion. *See National Rural Telecommunications Cooperative v. DIRECTV, Inc.,* 221 F.R.D. 523,

527 (C.D. Cal. 2004) (settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair); *Rodriguez v. W. Publishing*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arm's length, non-collusive, negotiated resolution.").

The relief provided to the Class is adequate under Rule 23(e)(2)(C) with a payout to the Class Members of approximately $198 per text message received, is on the higher side of other approved TCPA settlements. *See e.g. Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, [DE 96] at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40).

Lastly, the proposal treats Class Members equitably relative to each other as required by Rule 23(e)(2)(D). Any Settlement Class member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement and shall automatically be mailed a Settlement Fund Payment. Settlement Class Members will receive payment for each text message that they received. The amount of each Settlement Fund Payment shall be determined by the following formula: (1) Net Settlement Fund divided by total number of Messages = Settlement Fund Payment Per Message and (2) Settlement Fund Payment Per Message multiplied by the number of Messages each Settlement Class Member received = Settlement Fund Payment to Class Member.

### IV. CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as **Exhibit C**; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in paragraph I of the Agreement; and (5) enter Final Judgment dismissing the Action with prejudice.

Dated: August 19, 2021

Respectfully submitted,

*/s/ Ignacio J. Hiraldo, Esq.*

**IJH LAW**
Ignacio J. Hiraldo, Esq. (*pro hac vice*)
Florida Bar No. 0056031
Washington, DC Bar No. 485610
1200 Brickell Ave Suite 1950
Miami, FL 33131
Email: ijhiraldo@ijhlaw.com
Telephone: 786.496.4469

| **HIRALDO P.A.** | **EISENBAND LAW, P.A.** |
|---|---|
| Manuel S. Hiraldo (*pro hac vice*) | Michael Eisenband (*pro hac vice*) |
| Florida Bar No. 030380 | Florida Bar No. 94235 |
| 401 E. Las Olas Boulevard Suite 1400 | 515 E. Las Olas Boulevard, Suite 120 |
| Ft. Lauderdale, Florida 33301 | Ft. Lauderdale, Florida 33301 |
| Email: mhiraldo@hiraldolaw.com | MEisenband@Eisenbandlaw.com |
| Telephone: 954-400-4713 | Telephone: 954.533.4092 |