**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ricci Saliba,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>KS Statebank Corporation,<br><br>　　　　　　Defendant. | No. CV-20-00503-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement (Doc. 55) and Plaintiff's Motion for Attorneys' Fees. (Doc. 56). The Court conducted a Final Fairness Hearing on Plaintiff's Motion for Final Approval and Plaintiff's Motion for Attorneys' Fees on October 6, 2021. Having considered the matter, the Court will approve the settlement in its entirety and award attorneys' fees to class counsel in the amount of 28% of the common fund.

**I.　　BACKGROUND**

Defendant is a bank that, among other things, offers various loan products to consumers. From October 18, 2019 through January 16, 2020, Defendant's employee sent approximately 3,900 marketing text messages to Plaintiff and approximately 360 individuals. (Doc. 55 at 2).

Plaintiff filed suit, claiming that these messages violated the Telephone Consumer Protection Act (TCPA) and that Defendant was vicariously liable for their employee's alleged violations. (*Id.*). Defendant denied any wrongdoing. (*Id.*).

After actively litigating the action, the Parties reached a proposed settlement agreement in January 2021. (Doc. 51 at 10). The settlement agreement establishes a $775,000 Settlement Fund to be distributed on a pro rata basis to class members. (Doc. 55 at 2). Class members stand to receive approximately $198 per text message received. (*Id.*).

On May 25, 2021, this Court granted preliminarily approval of the settlement agreement. (Doc. 54). Plaintiff now seeks Final Approval of the Class Settlement. (Doc. 55). Additionally, Plaintiff's counsel seeks an award of fees in the amount of 28% or $217,000 of the common fund and reimbursement of litigation costs and expenses of $12,638.89. (Doc. 56). Finally, Plaintiff seeks an incentive award of $10,000. (*Id.*).

**II.     Motion for Final Approval of Agreement**

**A. Settlement Class Meets Requirements for Class Certification under Rule 23(a) and (b).**

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (holding that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees). Class actions are governed by Federal Rule of Civil Procedure 23. In order to certify a class, each of the four requirements of Rule 23(a) must be met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). In addition to satisfying the Rule 23(a) requirements, the proposed class must satisfy the requirements of one of the subdivisions of Rule 23(b). *Id.*

The Court previously preliminarily certified the Settlement Class for settlement purposes only. (Doc. 54). Because nothing has changed to affect the propriety of certification of the Settlement Class, the Court's analysis is largely the same as set forth in its May 25, 2021 Order. (*Id.*).

1. <u>Numerosity</u>: Approximately 360 individuals are members of the proposed Settlement Class. The proposed Settlement Class is thus so numerous that joinder

of all members is impracticable.

2. Commonality: "[C]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (citation omitted). Additionally, it must be "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Here, the class-wide settlement satisfies the commonality requirement by resolving the common questions Plaintiff contends underlie her claims.

3. Typicality: The typicality requirement is satisfied because the settlement uniformly and fairly resolves claims concerning the same set of alleged practices, legal theories, and alleged harms. *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN (NLS), 2013 U.S. Dist. LEXIS 15731, at *3 (S.D. Cal. Feb. 4, 2013) (finding plaintiffs' claims typical of the class in part because their claims were "based on the same legal theory as that applicable to the class: that the calls violated the TCPA").

4. Adequacy: The named Plaintiff must fairly and adequately protect the interests of the class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). "To determine whether [the] named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (internal quotation marks omitted). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Id.*; *see also Ahmed v. HSBC Bank USA*, No. ED CV 15-2057 FMO (SPx), 2019 U.S. Dist. LEXIS 104401, at *17 (C.D. Cal. June 21, 2019). Plaintiff has been diligent in prosecuting her claims and the putative class claims. Plaintiff and her counsel have

actively litigated the case and there are no known conflicts of interest. (Doc. 51-2 at 3).

A class action may be maintained if Rule 23(a) is satisfied and if the proposed class satisfies one of the requirements of Rule 23(b). *Zinser*, 253 F.3d at 1186. In this case, Plaintiff seeks to certify the Settlement Class under subdivision Rule 23(b)(3), which permits certification if "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, Rule 23(b)(3) is satisfied because the common legal and alleged factual issues presented by the settlement agreement predominate over individualized issues, and resolution of the common issues for the members of the Settlement Class in a single, coordinated proceeding is superior to hundreds of individual lawsuits addressing the same legal and factual issues. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Plaintiff also satisfied the notice provisions of Rule 23(c)(2). (Doc. 55 at 4). In conclusion, this Court reconfirms its Order certifying a class.

**B. The Settlement Agreement Meets the Requirements for Final Approval**

Having certified the settlement class, the Court must next determine whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e). In this Circuit, a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight "*Churchill* factors." *See Churchill Vill., L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004). These factors are:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)

(quoting *Churchill*, 361 F.3d at 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

1. Strength of the Plaintiff's case

To assess the strength of Plaintiff's case, the Court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp 1379, 1388 (D. Ariz. 1989).

In this case, the parties dispute who would prevail on the merits if this litigation continues. Plaintiff alleges that the text message violated the TCPA because the text messages were sent without his first obtaining recipients' express written consent. (Doc. 55 at 7). Plaintiff also alleges that Defendant was vicariously liable for the alleged violations of the TCPA because Defendant's employee sent the messages. (*Id.*). Defendant argues that it is not liable for the text messages because its employee was not acting within the scope of employment when he sent the messages. (*Id.*). Additionally, Defendant likely would argue that the equipment used to send the text messages does not fall under the statutory language of the TCPA. (Doc. 56 at 4). The legal and factual hurdles weigh in favor of settlement approval.

2. The risk, expense, complexity, and likely duration of further litigation

To assess the risk of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

While Plaintiff's case is strong, she acknowledges that there is a question as to whether her motion for class certification would be granted. (Doc. 55 at 7). Additionally, Defendant had valid defenses to the arguments Plaintiff raised. (*Id.*). The parties would each bear a significant risk and a strong likelihood of contentious litigation which would be costly to the parties. As a result, the Court concludes that the risk and expense of further litigation weighs strongly in favor of the Court's conclusion that the Settlement is

fair, reasonable, and adequate.

3. <u>The risk of maintaining class action status throughout the trial</u>

Under Rule 23, the Court may revisit its prior grant of certification at any time before final judgment. Fed.R.Civ.P. 23(c)(1)(C) ("An order under that grants or denies class certification may be altered or amended before final judgment"); *see Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012). It is possible that the class could have been decertified or modified before the conclusion of trial. Fed.R.Civ.P. 23(d). This factor does not weigh in favor or against of approving the settlement.

4. <u>The amount offered in settlement</u>

Defendant has agreed to provide a $775,000 non-reversionary Settlement Fund, which will be used to pay all claiming Settlement Class Members and all settlement costs. (Doc. 55 at 8). Class Counsel estimates that the individual Settlement Class Members award will be approximately $198 per text message received by each Settlement Class Member, before reduction of attorneys' fees and costs, Service Award, and notice and administration costs. (*Id.*).

"The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). The recovery in this case is in line or exceeds the payments in other TCPA settlements approved across the country. *E.g. Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Doc. 96 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Doc. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40); *Kramer v. Autobytel, Inc.*, No. 10-cv-2722, Doc. 148 (N.D. Cal. 2012) (cash payment of $100 to each class member); *Estrada v. Yogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants estimated to receive $20 to $40); *In re Capital One*, 80 F. Supp. 3d 781,

787 (N.D. Ill. 2015) (each claimant received $34.60); *Arthur v. Sallie Mae, Inc.*, 10-cv-0198-JLR (W.D. Wash.) (Class members were to receive between $20 and $40 dollars per claim); *Fox v. Asset Acceptance, LLC*, No. 2:14-cv-00734-GW-FFM (C.D. Cal. June 20, 2016) (estimating recovery between $11.79 and $28.22 per person).

Given these past results—and the fact that no Class Member suffered any monetary harm or damages as a result of the text messages—the Court concludes that the fourth factor is met.

5. The extent of discovery completed and the stage of the proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV, Inc.*, 221 F.R.D. at 528. The Parties actively litigated the action and Plaintiff's Motion for Class Certification was fully briefed and pending at the time the Settlement was reached. (Doc. 36). Parties had also completed discovery including depositions of Plaintiff, non-party Roy Meshel, Defendant's corporate representative, and the corporate representative of non-party Skipio LLC. (*Id.*). Moreover, the settlement was largely the result of arms-length negotiations conducted by an experienced mediator. As a result, the Parties were thoroughly informed of the claims and the risks associated with them before reaching a settlement. This factor weighs in favor of settlement approval.

6. The experience and views of counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *DIRECTV, Inc.*, 221 F.R.D. at 528.

Class counsel has substantial experience litigating TCPA class actions. They "strongly believe" that the Settlement is fair, reasonable, adequate, and in the best interests of the Class Members. (Doc. 55 at 10). The opinion of experienced counsel supporting the settlement is entitled to considerable weight. *Kirkorian v. Borelli*, 695 F.

Supp. 446 (N.D. Cal.1988). This factor also supports approval of the settlement.

7. The presence of a governmental participant

No governmental agency raised objections or concerns about the settlement and this factor therefore supports final approval. (Doc. 55 at 9–10). This factor does not weigh in favor or against of approving the settlement.

8. Reaction of class members

Plaintiffs claim that the Settlement has been very well received. (Doc. 55 at 10). They say that not a single Class Member has objected and not a single Class Member has opted-out of the Settlement which was reached. (*Id.*). The lack of objections and exclusions strongly support approval. *See Arnold v. Ariz. Depot. Of Pub Safety*, No. CV-01-1463-PHX-LOA, 2006 WL 2168637, at *10 (D. Ariz. July 31, 2006).

Ultimately, there is nothing before the Court to suggest that the settlement agreement is anything but "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e).

**C. The More Probing Inquiry is also Satisfied**

While the settlement agreement satisfies the *Churchill* factors, the factors alone are not enough to survive appellate review for pre-certification settlements. *Kim v. Allison*, 2021 U.S. App. Lexis 24495, at *16 (9th Cir. August 17, 2021). The settlement agreement must also meet the requirements of Rule 23(e)(2). Rule 23(e)(2) requires the court to consider "the terms of any proposed award of attorney's fees" and scrutinize the settlement for evidence of collusion or conflicts of interest before approving the settlement as fair. *Briseño v. Henderson*, 998 F.3d 1014, 1024–25 (9th Cir. 2021).

Because pre-certification settlements are ripe for abuse, the Ninth Circuit has identified "red flags" that suggest that "plaintiff's counsel has subordinated class relief to self-interest." *Kim*, 2021 U.S. App. Lexis 24495, at *19. Signs of collusion can include: "(1) a handsome fee award despite little to no monetary distribution for the class; (2) a "clear sailing" provision under which defendant agrees not to object to the attorneys' fees sought, and (3) an agreement that fees not awarded will revert to the defendant, not the class fund." *Id.* at *20 (citing *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015)).

"The presence of these three signs is not a death knell." *Id.* But the Court must scrutinize them and "assure itself that the fees awarded in the agreement were not unreasonably high." *Allen*, 787 F.3d at 1224.

The settlement provision in this case provides direct monetary relief to the class who received text messages. Unlike in *Kim*, in which relief was provided only to a subset of the class, relief here is available to every class member. (Doc. 55 at 11). The fee award provided in this case will be distributed to the class except for the fees to go to Attorneys. (*Id.*). Because class counsel fees come from the class fund, counsel "were incentivized to negotiate the largest fund possible." (*Id.*).

Likewise, there is no other evidence of collusion. There is no clear-sailing provision in the agreement under which defendant agrees not to object to the attorneys' fees sought. (Doc. 55 at 11). Additionally, any fees not awarded do not revert to the defendant but instead go to the common fund. (*Id.*). Finally, the settlement was the result of arms-length negotiations with a mediator. (*Id.*). All the evidence supports the conclusion that the settlement was not a result of collusion between the Parties.

Accordingly, the Court GRANTS Plaintiff's motion for approval of settlement.

### III. PETITION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

#### A. Class Counsel's request for Attorneys' Fees is Reasonable

Class counsel requests an award equal to approximately 28% of the Settlement Fund. (Doc. 56 at 3). The Federal Rules of Civil Procedure provide that in "a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). There are two methods of calculating attorneys' fees in class actions: (1) the lodestar method and (2) the percentage-of-recovery method. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). In the Ninth Circuit, a district court has the discretion to award attorneys' fees as a percentage of the common fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). This is most used "where the defendants provide

monetary compensation to the plaintiffs" and class benefit is easy to quantify. *See In re Hyundai*, 926 F.3d 539, 570 (9th Cir. 2019). Under this method, "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon*, 150 F.3d at 1029. Because Defendant is providing Plaintiff monetary compensation, the Court has adopted the percentage-of-recovery method.

The benchmark for percentage-of-recovery awards is 25 percent of the total settlement. *Vizcaino*, 290 F.3d at 1047. But in cases where the common fund is under $10 million, fees are often above 25%. *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008). "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit in *Vizcaino* identified several factors for courts to consider in determining whether a percentage-based award is reasonable: (1) the result obtained; (2) the risk involved in the litigation; (3) the contingent nature of the fee; (4) counsel's efforts, experience, and skill; and (5) awards in similar cases. *Id.* at 1048–50.

1. The result obtained

Class counsel argues that they obtained a tremendous result given the significant ambiguity in the enforcement of the ATDS as defined by the TCPA. (Doc. 56 at 4). They claim that Plaintiff would have faced challenges in proving that Defendant was liable under the TCPA for the actions of its employee. (*Id.*).

Counsel also asserts that the settlement "compares very favorably on a per-class-member basis" to similar TCPA text message cases. (*Id.* at 5). Counsel cites to several cases with the settlements that fall in a similar range to the settlement amount in this case. (*Id.* at 6). The first *Vizcaino* factor supports the requested fee award.

2. The risk involved in the litigation

The second *Vizcaino* factor also supports the requested fee award as there was still great risk in the litigation. The outcome of the litigation was anything but certain as the class still needed to be certified. Additionally, Plaintiff would also had to have shown that Defendant's employee violated the TCPA and were liable for his conduct. Defendant had

several defenses it could raise. Given these risks, the cash settlement supports the requested fee award.

3. The contingent nature of the fee

Class counsel took on the case on a contingent basis. They faced nonpayment for its work on the case. The contingent nature of Class Counsel's work therefore supports the requested fee award. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *14 (N.D. Cal. Aug. 17, 2018).

4. Counsel's efforts, experience, and skill

Class counsel has experience with many consumer protection class actions in the past five years. They have been recognized by one federal judge as having extensive litigation experience in TCPA actions. (Doc. 56 at 10). Class counsel's substantial experience support the requested fee award.

5. Awards in similar cases

Lastly, the awards in similar cases support the requested fee awards. Plaintiff cites several TCPA class actions from this circuit in which fees were equal to or in excess of the 28% requested here. (Doc. 56 at 11); *see Ritchie v. Van Ru Credit Corp.*, No. 2:12-CV-01714-PHX-SMM, 2014 WL 3955268, at *4 (D. Ariz. Aug. 13, 2014) (awarding attorneys' fees of 28% of the common fund, plus the separate reimbursement of litigation costs and expenses); *Cabiness v. Educ. Fin. Solutions*, LLC, No. 16-cv-01109-JST, 2019 WL 1369929, at *8 (N.D. Cal. Mar. 26, 2019) (awarding fees amounting to 30% of common fund); *Gergetz v. Telenav, Inc.*, No. 16-CV-04261-BLF, 2018 WL 4691169, at *8 (N.D. Cal. Sept. 27, 2018) (awarding 30% of common fund); *Gutierrez-Rodriguez v. R.M. Galicia, Inc.*, No. 16-CV-00182-H-BLM 2018 WL 1470198, at *7 (S.D. Cal. Mar. 26, 2018) (awarding 28.8% of common fund); *Dakota Med., Inc. v. RehabCare Grp., Inc.*, 2017 WL 4180497, at *8 (E.D. Cal. Sep. 20, 2017) (awarding 30% of common fund); *Ikuseghan v. Multicare Health Sys.*, No. C14-5539, 2016 WL 4363198, at *2 (W.D. Wash. Aug. 16, 2016) (awarding 30% of common fund); *Hageman v. AT&T Mobility LLC*, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11,

2015).

Accordingly, the Court's review of the *Vizcaino* factors supports attorneys' fee in the amount of 28%.

### B. Class Counsel's Request for Costs is Reasonable

Class counsel requests costs of $12,638.89. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).

Here, class counsel seeks the reimbursement of costs which include the cost of filing the case, service, mediation expenses, and discovery costs. These costs were necessary to advance this action on behalf of the class and, ultimately, secure the resolution of this action. In addition, class counsel advanced these costs without assurance that they would ever be recovered. *See, e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (noting an attorney usually may recover "out-of-pocket expenses that 'would normally be charged to a fee paying client.'"). The expenses sought here are fair, reasonable, and recoverable. Plaintiff also notes that no class members have objected to class counsel's request for reimbursement of litigation costs and expenses. Accordingly, the Court concludes that class counsel's request for costs is fair, adequate, and reasonable.

### C. Plaintiff's Requested Incentive Award is Reasonable

Finally, Plaintiff asks for a $10,000 incentive award for her work on the case. The Ninth Circuit recognizes that named plaintiffs in class action litigation are eligible for reasonable incentive payments. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The district court must evaluate each incentive award individually, using "'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . .'" *Id.* (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Plaintiff cites to several class action cases

under the TCPA that resulted in a similar incentive award. *See Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 U.S. Dist. LEXIS 17546 (N.D. Ga. Jan. 30, 2017) ($20,000); *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14- CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) ($20,000); *Prater*, 2015 WL 8331602, at *3 ($20,000); Hageman, 2015 WL 9855925, at *4 ($20,000); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) ($25,000) award to TCPA class representative)); *Ritchie*, 2014 WL 3955268, at *3 ($12,000).

In this case, the Settlement Agreement provides for a $10,000 Incentive Award to Plaintiff. Plaintiff "devoted time and energy to this case, which included approving her class action complaint, participating in many strategy conferences with her counsel, responding to written discovery requested directed to her, participating in her deposition, and taking time to be available for the mediation." Considering her involvement in the manner, the Court concludes that the Incentive Award in the amount of $10,000 should be GRANTED.

### IV. CONCLUSION

For all the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion for Final Approval (Doc. 55) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorneys' Fees, Costs, Expenses, and an Incentive Award (Doc. 56) is GRANTED.

**IT IS FURTHER ORDERED**, the Court having approved the parties' settlement resolving this matter, the parties shall file a status report regarding whether this case can be closed within 30 days.

Dated this 13th day of October, 2021.

James A. Teilborg
Senior United States District Judge